1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DANELLE SCOGGINS, | Case No.  1:22-cv-01542-EPG |
| 12                    Plaintiff, | SCREENING ORDER |
| 13        v. | ORDER FOR PLAINTIFF TO: |
| 14  TURNING POINT OF CENTRAL | (1) FILE A FIRST AMENDED COMPLAINT; |
| 15  CALIFORNIA, INC., | OR |
| 16                    Defendants. | (2) NOTIFY THE COURT THAT SHE WISHES TO STAND ON HER COMPLAINT, SUBJECT TO THE COURT ISSUING |
| 17 | FINDINGS AND RECOMMENDATIONS TO A DISTRICT JUDGE CONSISTENT WITH |
| 18 | THIS ORDER |
| 19 | |
| 20 | (ECF No. 1). |
| 21 | THIRTY (30) DAY DEADLINE |

22       Danelle Scoggins ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed the

23  complaint commencing this action on December 1, 2022. (ECF No. 1). Plaintiff alleges that

24  unsafe living conditions, including mold and exposed wires, have caused physical injuries and

25  emotional distress. Plaintiff also alleges that she is a victim of housing discrimination based on

26  disability in violation of the Fair Housing Act. Further, Plaintiff alleges that she is the victim of

27  retaliation due to her attempts to prosecute her FHA claims.

28

1

1

2     The Court has reviewed Plaintiff's complaint and finds that it fails to comply with Federal

3     Rule of Civil Procedure 8(a) because it does not contain a short and plain statement of Plaintiff's

      claims. After Plaintiff reviews this order, Plaintiff can decide to file an amended complaint, which

4     the Court will screen in due course. Plaintiff may file an amended complaint that is **no longer**

5     **than 20 pages (including exhibits)**. Plaintiff can also notify the Court that she wants to stand on

6     her complaint, in which case this Court will issue findings and recommendations to the district

7     judge assigned to the case recommending that Plaintiff's complaint be dismissed for the reasons

8     in this order. If Plaintiff does not file anything, the Court will recommend that the case be

9     dismissed.

10    **I.      SCREENING ORDER**

11            As Plaintiff is proceeding *in forma pauperis* (ECF No. 3), the Court screens the complaint

12    under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have

13    been paid, the court shall dismiss the case at any time if the court determines that the action or

14    appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

15            A complaint is required to contain "a short and plain statement of the claim showing that

16    the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

      required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

17    conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

18    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual

19    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting

20    *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this

21    plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not

22    required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681

23    (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal

24    conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

25            Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal

26    pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

27    *pro se* complaints should continue to be liberally construed after *Iqbal*).

28    \\\

1

**II.      SUMMARY OF PLAINTIFF'S COMPLAINT**

2

3

Plaintiff's complaint names as defendants Falcon Court/ Turning Point of Central

California, Inc. and Turning Point of Central California, government agency.[1] As basis for

4

jurisdiction, Plaintiff alleges that her complaint is brought under the Fair Housing Act. (ECF No.

5

1, p. 3-4).

6

Plaintiff's complaint alleges that in 2014 her younger child was pronounced deceased but

7

was resuscitated. Plaintiff alleges that this event was due to exposed mold inside her apartment.

8

Plaintiff also alleges that at some point there was an explosion caused by cut wires insider her

apartment. As a result of the mold exposure, explosion, and unsafe environmental conditions,

9

Plaintiff alleges that she and her children have experienced physical pain and mental distress due

10

to the unsafe conditions. Plaintiff states that she has nowhere else to live aside from the apartment

11

and she stays because she does not want to be homeless. Plaintiff also alleges that an unidentified

12

group of individuals is intimidating her and her family in retaliation for Plaintiff filing complaints

13

related to the unsafe conditions. (ECF No. 1, p. 2, 5-6).

14

Attached to Plaintiff's complaint are several documents, including medical records (*id.* at

15

7-9, 23-30, 86-90), court documents from *Scoggin v. Turning Point Central California*, No. 20-

16

CV-00140-DAD-SAB ("*Scoggin I"*) (*id.* at 11-14, 20-21, 92, 99-100)[2], state court documents (*id.*

17

at 15-17), housing rental documents (*id.*  at 18-19, 93-96), and police reports (*id.* at 40-86).

18

Plaintiff also includes documents that appear to supplement or repeat allegations from

19

Plaintiff's complaint. (*See id.* at 22, 31-39). For example, in an undated document titled

20

"Complaint," Plaintiff states that she has attempted to contact the United States Department of

21

Housing and Urban Development to investigate the alleged housing discrimination, but she did

22

[1] The Court notes that Falcon Court is a program operated by Turning Point, entitled "Falcon Court Permanent

23

Supportive Housing," and is described as "provid[ing] permanent supportive housing to 34 disabled chronically

24

homeless individuals, and 6 chronically homeless families. The program offers case management, life skills training, education and employment assistance, linkages to community resources, and financial counseling." *See* Turning

25

Point of Central California, Inc., Falcon Court, https://www.tpocc.org/falcon-court, (last visited March 1, 2023). Turning Point of Central California, Inc., is a tax-exempt corporation that provides services in several counties in

26

Central California. *See* Turning Point of Central California, Inc., Our History, https://www.tpocc.org/history, (last visited March 1, 2023).

27

[2] It appears that Plaintiff has litigated similar claims in *Scoggin v. Turning Point Central California*, No. 20-CV-00140-DAD-SAB, 2020 WL 1492671, (E.D. Cal., Mar. 27, 2020), order adopted 2021 WL 634987, (E.D. Cal., Feb.

28

18, 2021) (dismissing Plaintiff's claims due to "plaintiff's failure to prosecute, failure to obey court orders, and failure to state a claim"). However, Plaintiff's prior case was not dismissed with prejudice.

not receive a response. (*Id.* at 31). Because the discrimination was ongoing, Plaintiff filed a complaint in the United States District Court for the Eastern District of California, but unidentified individuals did everything they could to stop the matter from being heard. (*Id.*) As part of the retaliation against Plaintiff, unidentified individuals went into Plaintiff's apartment and cut wires. (*Id.* at 32). Three months after the wires were cut, around June 28, 2020, there was an explosion and Plaintiff was sent to a motel. (*Id.*) Plaintiff states that she wrote the Amended Complaint, and so now she is writing everything that happened down and has pictures, police reports, and dated papers as proof. (*Id.*) Plaintiff further states that her allegations regarding the break-ins, rat and termite infestation, and everything else that has happened to Plaintiff is on paper. (*Id.*) Plaintiff states that she is in Federal Court because she wants to know why these things happened, and if they were done because Plaintiff was standing up for herself and a safe environment for her children. (*Id.* at 33). In another document titled "Complaint" and dated June 5, 2022, Plaintiff states that the reason why she filed this lawsuit is because she has been harassed and wrongfully taken advantage of due to her lack of comprehension. (*Id.* at 34).

## III.    ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.    Federal Rule of Civil Procedure 8(a)

Plaintiff's complaint is subject to dismissal because it does not contain a short and plain statement of Plaintiff's claims.

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. A court may dismiss a complaint for failure to comply with Rule 8(a) if it is "verbose, confusing and conclusory." *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981); *Brosnahan v. Caliber Home Loans, Inc.*, 765 F. App'x 173, 174 (9th Cir. 2019). Additionally, a court may dismiss a complaint for failure to comply with Rule 8(a) if it is "argumentative, prolix, replete with redundancy, and largely irrelevant." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

1
2
3
4
5
6
7

Plaintiff's amended complaint violates Rule 8(a). The complaint is 101 pages and includes several attached documents that are presented without any context as to how they relate to the allegations in Plaintiff's complaint. (*See, e.g.,* ECF No. 1). For example, Plaintiff attaches over forty pages of police reports related to various incidents of attempted theft or vandalism reported by Plaintiff. (*See id.* at 40-86). It is not clear how these reports relate to Plaintiff's claims for housing discrimination against Defendant, or how they are related to Plaintiff's allegations regarding uninhabitable conditions against Defendant.

8
9
10
11

Plaintiff's complaint is also confusing and conclusory. To the extent that Plaintiff alleges that unsafe living conditions have caused Plaintiff various physical and mental injuries, Plaintiff does not clearly state what specific actions were done or by whom, and how those actions violated a specific right or rule. Further, Plaintiff makes no link between her allegations of uninhabitable conditions and discriminatory treatment in her FHA claim.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Similarly, while Plaintiff alleges that she is the victim of housing discrimination on account of her "mental status" (ECF No. 1, p. 4), and that she is being taken advantage of due to her lack of comprehension, (*see id.* at 34), these allegations are insufficient to claim under the FDA. Plaintiff does not allege that she suffers "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1). Nor does Plaintiff allege that she sought any specific reasonable accommodation for her disability and was refused on account of her disability. Moreover, Plaintiff does not allege that she was denied equal treatment related to the terms, conditions, or privileges of her rental relationship with Defendant because of her disability. *See Bryant v. Steinburg*, No. 2:22-cv-1308-TLN-KJN, 2022 WL 4961813, at *4 (E.D. Cal. Oct. 4, 2022) (explaining the plaintiff "fails to allege facts to allow the court to reasonably infer discriminatory conduct against a protected class"); *Gibson v. Cmty. Dev. Partners,* No. 3:22-CV-454-SI, 2022 WL 10481324, at *5 (D. Or. Oct. 18, 2022) ("Because Plaintiff has not alleged that she was treated differently from other tenants at all, let alone because of a protected status, Plaintiff's complaint fails to state a claim for discrimination.").

27
28

Further, to the extent that Plaintiff alleges that she is being retaliated against due to complaints that she has filed with the Department of Housing and Urban Development and in

1   Federal Court, Plaintiff fails to identify a specific adverse housing consequence as a result of her

2   protected activity. Indeed, Plaintiff's complaint does not clearly state what specific actions were

3   done or by whom. Rather, Plaintiff merely asserts that "they" have done everything they can to

4   prevent Plaintiff from prosecuting her housing related grievances.

5      The Court will allow Plaintiff to amend her complaint. Plaintiff's amended complaint

6   should include a "short and plain statement of the claim showing that the pleader is entitled to

7   relief." It should also explain which claims Plaintiff is bringing and the facts that support those

8   claims. Additionally, Plaintiff's amended complaint should conform to the page requirements set

9   forth by the Court.

## IV.  LEGAL STANDARDS

10     If Plaintiff chooses to amend her complaint, the Court provides the following legal

11  standards that may be relevant to her.

12     A.  Discrimination under the Fair Housing Act

13     A plaintiff may allege a claim under the Fair Housing Act against any person who sells or

14  rents private or public housing, or who participates as a principal or agent in such conduct. *See* 42

15  U.S.C. § 3603. The FHA prohibits discrimination "against any person in the terms, conditions, or

16  privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

17  therewith," based on "color, religion, sex, familial status, or national origin," and

18  "handicap." *See* 42 U.S.C. § 3604(b). The Fair Housing Amendments Act extended the FHA's

19  protections against discrimination to those with disabilities. Fair Housing Amendments Act of

20  1988, Pub.L. No. 100-430, §(a), 102 Stat. 1619 (1988). The Ninth Circuit has instructed that the

21  "threshold for pleading discrimination claims under the [FHA] is low." *McGary v. City of*

22  *Portland*, 386 F.3d 1259, 1262 (9th Cir. 2009). The Supreme Court has recognized that the

23  FHA's "broad and inclusive compass" and has instructed courts to accord a "generous

24  construction of the Act's complaint-filling provision." *City of Edmonds v. Oxford House, Inc.*,

25  514 U.S. 725, 731 (1995).

26     A plaintiff can establish an FHA discrimination claim under a theory of disparate

27  treatment, disparate impact, or a failure to make reasonable accommodations for handicapped

28  housing. *See Gamble v. City of Escondido*, 104 F.3d 300, 304-5 (9th Cir. 1997) (internal citations

1    omitted). As defined under the FHAA, a "handicap" is "a physical or mental impairment which

2    substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1).

3           To establish a prima facie case of discrimination under the FHA based on disparate

4    treatment, plaintiff must first show that: (1) she is a member of a protected class; (2) she was

5    denied a rental relationship or otherwise treated differently in the terms, conditions, or privileges

6    of her rental relationship, or in the provision of services or facilities to her as a tenant; and (3) the

7    different treatment was, at least in part, because of her protected class status. *See* 42 U.S.C. §

8    3604(b); *see also Shultz v. Kern Cty.*, 2022 WL 658140, at *2 (E.D. Cal. Mar. 4, 2022)

9    (quoting *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997)). Discriminatory intent

10   or motive is a necessary element of any disparate treatment claim under the FHA. *Sw. Fair Hous.*

11   *Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 972 (9th Cir. 2021)

12   ("[A]llegations that discrimination was a motivating factor behind a defendant's actions are

13   essential to plead a disparate-treatment claim."); *see also* Gibson, 2022 WL 10481324, at *5

14   ("When first pleading a disparate treatment claim, the burden is on Plaintiff to allege that

     Defendants had some discriminatory intent underlying their actions.").

15          "[T]he FHA also encompasses a second distinct claim of discrimination, disparate impact,

16   that forbids actions by private or governmental bodies that create a discriminatory effect upon a

17   protected class. . .without any concomitant legitimate reason." *Avenue 6E Investments, LLC v.*

18   *City of Yuma, Ariz.*, 818 F.3d 493, 503 (citing *Texas Dept. of Hous. and Cmty. Affairs v.s*

19   *Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 540 (2015)). To establish a prima facie case of

20   discrimination under the FHA based on disparate impact, plaintiff must allege "(1) the existence

21   of a policy, not a one-time decision, that is outwardly neutral; (2) a significant, adverse, and

22   disproportionate effect on a protected class; and (3) robust causality that shows, beyond mere

23   evidence of a statistical disparity, that the challenged policy, and not some other factor or policy,

24   caused the disproportionate effect." *Sw. Fair Hous. Council, Inc.*, 17 F.4th at 962 (clarifying

25   disparate impact standard in light of *Inclusive Cmtys.*, 576 U.S. 519). A plaintiff must "allege

26   facts at the pleading stage . . . demonstrating a causal connection." *See Inclusive Cmtys.*, 576 U.S.

27   at 543.

28

1

2

3

4

5

6

7

8

9

10

The FHAA prohibits actions by private or governmental bodies that "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a handicap[.]" 42 U.S.C. § 3604(2). To make out a prima facie case of a refusal to make a reasonable accommodation, a plaintiff must demonstrate that: (1) she suffers from a "handicap" as defined in 42 U.S.C. § 3602(h); (2) the defendant knew of the handicap or should reasonably be expected to know of it; (3) the accommodation of the handicap "may be necessary" to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the accommodation. *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

11

B.      Retaliation under the Fair Housing Act

12

13

14

15

16

17

18

19

The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the Fair Housing Act]." 42 U.S.C. § 3617. To make out a prima facie case of retaliation under the FHA, a plaintiff must establish (1) that she engaged in a protected activity, (2) an adverse housing consequence casually linked to that activity and (3) resulting damage. *San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159 F.3d 470, 477 (9th Cir.1998).

C.      Breach of the Implied Warranty of Habitability

20

21

The Court notes that Plaintiff's complaint and exhibits make references to mold, exposed wires, and vermin infestations.

22

23

24

25

26

27

Under California law, to sufficiently plead a breach of implied warranty of habitability, plaintiff must allege: (1) there was a materially defective condition affecting habitability; (2) the condition was unknown to the tenant at the time of occupancy; (3) the effect of the condition was not apparent through reasonable inspection; (4) notice was given to the landlord within a reasonable time after the tenant discovered or should have discovered the breach of warranty; and (5) the landlord was given a reasonable time to correct the defect. *Quevedo v. Braga,* 140

28

1

2

Cal.Rptr. 143, 147 (Cal.Ct.App. 1977).[3] "This implied warranty of habitability does not require

that a landlord ensure that leased premises are in perfect, aesthetically pleasing condition, but it

3

does mean that bare living requirements must be maintained." *Green v. Superior Court*, 10 Cal.

4

3d 616, 637(Cal. 1974) (en banc). "[A] residential tenant may not be deemed to have exempted a

5

landlord from the implied warranty of habitability by continuing to live in uninhabitable

6

premises, and breach of the warranty does not and should not depend upon a tenant's lack of

7

knowledge of the conditions which make the premises uninhabitable." *Knight v. Hallsthammer*,

8

29 Cal.3d 46, 59 (Cal. 1981).

9

           D.      Breach of the Implied Covenant of Quiet Enjoyment

10

           California law also implies in every lease a covenant of quiet enjoyment "whereby the

11

landlord impliedly covenants that the tenant shall have quiet enjoyment and possession of the

12

premises." *Andrews v. Mobile Aire Estates*, 125 Cal. App. 4th 578, 588 (Cal. 2005). "The claim

13

has often been inextricably tied to breach of the covenant by eviction, which disturbs the tenant's

14

right to undisturbed possession of the leased premises." *Ginsberg v. Gamson*, 205 Cal.App.4th

15

873, 897 (Cal. Ct. App. 2012). However, "breach of the implied covenant of quiet enjoyment can

16

be understood as a title encompassing claims for wrongful eviction, and also claims in which the

17

tenant's use of the premises is disturbed, but the tenant remains in possession." *Id.* at 898.

**V.     CONCLUSION AND ORDER**

18

           The Court concludes that Plaintiff's complaint fails to state any cognizable claims.

19

           Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give

20

leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with

21

time to file an amended complaint curing the deficiencies identified above. *Lopez v. Smith*, 203

22

F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within

23

thirty days.

24

           If Plaintiff chooses to file an amended complaint, the amended complaint must allege

25

26

27

[3] To the extent Plaintiff intends to bring an implied warranty of habitability or contract claim against Defendant, Plaintiff should be aware that such claims, without a cognizable federal claim, are reserved for state court. *See* 28 U.S.C. §§ 1331, 1332(a), 1367(a); *see also Osceola Blackwood Ivory Gaming Group, LLC v. Picayune Rancheria of Chukchansi Indians*, 272 F. Supp. 3d 1205, 1215 (E.D. Cal. 2017) (finding the district court lacked subject matter jurisdiction over plaintiff's state-law breach of contract claim).

28

violations under the law with the required specificity described above. Plaintiff should note that, although she has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Additionally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F.3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Alternatively, Plaintiff may choose to stand on this complaint, in which case the Court will issue findings and recommendations to the district judge consistent with this order.

Based on the foregoing, it is HEREBY ORDERED that:

1.    Within thirty (30) days from the date of service of this order, Plaintiff shall either:

a.  File a First Amended Complaint; or

b.  Notify the Court in writing that he wants to stand on his complaint.

2.    Should Plaintiff choose to amend her complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:22-cv-01542-EPG. Further, Plaintiff's First Amended Complaint shall be **no longer than 20 pages (including exhibits);** and

3.    Failure to comply with this order may result in the dismissal of this action.

IT IS SO ORDERED.

Dated:    **March 2, 2023**                    /s/ *Erica P. Grosjean*
                                                          UNITED STATES MAGISTRATE JUDGE